IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT L. RILEY, JR., )
)
Plaintiff, )
)
v. ) 1:25cv1185
)
PIEDMONT ELECTRIC MEMBERSHIP )
CORPORATION (PEMC) a/k/a )
PIEDMONT ELECTRIC )
COOPERATIVE (PEC), et al., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This employment case is before the court on the second motion to dismiss by Defendants Piedmont Electric Membership Corporation ("PEMC") and the members of its board of directors (collectively, the "Board"). (Docs. 7, 8.) Plaintiff Robert L. Riley, Jr. brings his claims pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). (Doc. 6.) Riley has filed a response in opposition (Doc. 9), and Defendants replied (Doc. 10). For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

I. **BACKGROUND**

The facts, as alleged in Riley's first amended complaint and taken as true for purposes of Defendants' motion, show the

following:

Riley is an African American male over 50 years old. (Doc. 6 ¶ 2.) PEMC is a nonprofit electric utility with its Board comprising nine members. (Id. ¶¶ 3-4.) Riley worked at PEMC for 32 years and 11 months, and he served as PEMC's Vice President of Operations for the last 11 years before his termination on January 7, 2025. (Id. ¶¶ 33, 135.) During Riley's tenure as Vice President of Operations, he implemented initiatives that led to a 15% reduction in operational costs, achieved a 20% increase in employee safety records, and "consistently contributed to operational excellence and community engagement." (Id. ¶ 36.) Overall, Riley "performed in all of his roles in accordance with the standards provided to him," and he "received satisfactory or above performance reviews with positive comments." (Id. ¶ 38.)

On February 26, 2024, the Board announced its search for a new President and General Manager. (Id. ¶ 41.) The Board partnered with an executive search company to assist with the search. (Id. ¶ 44.) Riley applied for the position on March 14, 2024, and, among approximately 40 applicants, he was automatically placed on the initial list of ten candidates as an internal applicant. (Id. ¶¶ 43, 45-46.) The Board did not provide Riley with an initial interview, but he received a panel-style interview that allowed "a more customized interrogatory-styled interview to the other candidates." (Id. ¶ 47.) Riley did not advance among

2

the five finalists chosen by the Board for an in-person interview, however.  (Id. ¶¶ 49-50.)

According to Riley, the Board unequally applied the selection process to afford preferential treatment to a younger, white candidate, Jordan Overbee.  (Id. ¶¶ 54-55.)  Riley received notice of Overbee's hiring on June 11, 2024.  (Id. ¶ 84.)  Nevertheless, he alleges that the Board had already put into motion its plan to hire Overbee by May 6, 2024.  (Id. ¶ 57.)

Leigh Taylor, a recruiter, first informed Riley that he was not selected as one of the five finalists because of his lack of chief executive officer ("CEO") experience.  (Id. ¶¶ 64, 67.)  Finalist interviews continued "well after" Taylor told Riley he would not advance, and Riley later became aware that Overbee and other finalists also lacked CEO experience.  (Id. ¶¶ 66-67, 70.)  Upon information and belief, none of the five finalists was African American or over the age of 40.  (Id. ¶¶ 73-74.)  Riley further alleges that he possessed twice as much relevant experience as Overbee, and, unlike Overbee, he held both a bachelor's and a master's degree.  (Id. ¶¶ 75-77.)

Riley met with the Board on June 17, 2024.  (Id. ¶ 87.)  At this meeting, Board member Randy Kinley informed Riley that he did not have the "across the board" knowledge of PEMC needed for the president and general manager position.  (Id. ¶ 91.)  Board member Kinley also told Riley that he did not receive an in-person

3

interview because he had not attended a Management Internship Program. (Id. ¶ 92.) Board member Darren Chalk further noted that Riley had not submitted a vision statement, although Riley contends that he did submit a vision for PEMC in his video review. (Id. ¶ 93.) Riley alleges that these were shifting and inconsistent reasons for his non-selection as a finalist that evidence the Board's decision to ignore his qualifications and exclude him from the selection process. (Id. ¶ 94.)

Riley wrote a letter to the Board in response to the June 17, 2024 meeting, in which he requested an investigation into the selection process. (Id. ¶ 100.) The Board met on July 15, 2024, and Riley received a letter in response shortly thereafter that "dismissed [his] core concerns." (Id. ¶ 103.) Riley alleges, upon information and belief, that the Board had directed Overbee to take certain actions to "rein in" Riley. (Id. ¶ 104.)

Thus, on July 24, 2024, Overbee presented Riley with a non-disclosure agreement ("NDA") bearing Board member Kinley's signature. (Id. ¶ 106.) PEMC had never requested that Riley sign an NDA previously. (Id.) Overbee told Riley that "all staff" were required to sign the NDA, but after further inquiry from Riley, Overbee responded that the NDA requirement only applied to certain staff. (Id. ¶¶ 110-11.) PEMC never adopted a written policy regarding the new NDA requirement. (Id. ¶ 113.) Riley alleges that PEMC and the Board used the NDA as a retaliatory

4

measure in response to his expressed concerns over the selection process. (Id. ¶ 119.)

Riley continued to inquire with the Board regarding his concerns over the selection process. (Id. ¶ 116.) He also began to experience increased scrutiny of his work performance along with "negative and adverse responses," which he alleges amounted to a hostile work environment. (Id. ¶ 117.) Riley filed additional complaints and letters of inquiry through September 2024, and he ultimately filed his first charge with the Equal Employment Opportunity Commission ("EEOC") to allege discriminatory non-selection based on race and age on December 8, 2024. (Id. ¶ 118; see Doc. 6-1 at 1.) PEMC received notice of his EEOC charge ten days later, and Overbee "issued a mandate" to Riley to return the signed NDA on December 30, 2024. (Doc. 6 ¶¶ 132-33.) Riley informed Overbee that he did not feel comfortable signing the NDA before consulting an attorney. (Id. ¶ 134.) PEMC then terminated Riley on January 7, 2025, "purportedly for failing to sign the NDA." (Id. ¶¶ 135-36.) Five days later, Riley filed a second charge with the EEOC to allege retaliation and discriminatory termination based on race and age. (See Doc. 6-1 at 2-3.)

Riley filed the present lawsuit on December 29, 2025 (Doc. 1), and he timely filed a first amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a) after

Defendants' first motion to dismiss (Doc. 6; see Docs. 4, 5). Riley brings four claims against all Defendants, including the members of the Board in both their individual and official capacities: (1) failure to promote, non-selection, and termination pursuant to Title VII; (2) age discrimination pursuant to the ADEA; (3) retaliation pursuant to Title VII and 42 U.S.C. § 1981; and (4) failure to promote and termination pursuant to § 1981. (Doc. 6 ¶¶ 163-268.) Defendants then filed their second motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 6, 2026. (Doc. 7.) The motion is now fully briefed and ready for decision.

## II. ANALYSIS

### A. Standard of Review

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

6

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). But the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B. Whether Riley Has Alleged Viable Claims Against the Board Members**

**1. Title VII and the ADEA**

Defendants contend that neither Title VII nor the ADEA provides for individual or supervisor liability. (Doc. 8 at 12.) They also point out that Riley failed to name any of the Board members in his EEOC charge. (Id.) Riley never addresses this argument.

7

Title VII's remedial scheme "suggest[s] that Congress only intended employers to be liable for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998). "To permit individual liability would improperly expand the remedial scheme crafted by Congress." Id. Similarly, "the ADEA limits civil liability to the employer." Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994). Further, "[u]nder Title VII and the ADEA, a civil action may be brought only 'against the respondent named in the [EEOC] charge.' The purposes of this requirement include putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation." Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (citation omitted) (quoting 42 U.S.C. § 2000e-5(f)(1)).

Here, neither Title VII nor the ADEA provides a cause of action against the members of the Board in their individual capacities. Moreover, Riley asserted his first EEOC charge solely against PEMC.[1] (See Doc. 6-1 at 1.) Thus, Defendants are correct, and Riley's Title VII and ADEA claims against the members of the Board in their individual capacities will be dismissed.

---

[1] Riley's second EEOC charge names PEMC "and its Board of Directors." (Doc. 6-1 at 2.) Regardless of whether this charge sufficiently put the individual Board members on notice of Riley's Title VII and ADEA retaliation and discriminatory termination claims, the claims against the individual Board members nevertheless fail because Title VII and the ADEA do not provide for individual liability.

### 2. Section 1981

Defendants next contend that Riley has not advanced sufficient factual allegations against the individual Board members to support plausible claims of individual liability. (Doc. 8 at 13.) In fact, Defendants point out that seven of the nine members of the Board are named only in the caption of the amended complaint and in the section introducing the parties. (Id. at 13-14.) Defendants further argue that the amended complaint fails to demonstrate any discriminatory animus or conduct by Board members Kinley and Chalk. (Id. at 14-15.) Riley counters that the allegations regarding the Board members' direct involvement and responsibility for the hiring process, along with their shifting explanations for his failure to advance to the finalist stage, generate individual liability. (Doc. 9 at 8.)

To succeed on a § 1981 discrimination claim, a plaintiff must ultimately "establish that (1) the defendant intended to discriminate on the basis of [race], (2) the discrimination interfered with a contractual interest, and (3) the interference with a contractual interest would not have happened but for the plaintiff's [race]."[2] Resendiz v. Exxon Mobil Corp., 72 F.4th 623, 628 (4th Cir. 2023). "Thus, to survive a motion to dismiss, a

---

[2] Riley alleges he possessed "a valid oral contract of employment with PEMC." (Doc. 6 ¶ 145.) Cf. Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir. 1999) (finding an at-will employment relationship contractual and holding that "such relationships may therefore serve as predicate contracts for § 1981 claims").

9

plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements." Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022). On the other hand, to establish a prima facie case of retaliation pursuant to § 1981, "a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (citation modified) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)).

Section 1981 "should be interpreted as neither enlarging nor diminishing the liability of directors under general corporation law for tortious acts performed nominally by the corporation." Tillman v. Wheaton-Haven Recreation Ass'n, 517 F.2d 1141, 1144 (4th Cir. 1975). "'[T]o make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the action with the discriminatory action,' and the claim 'must be predicated on the actor's personal involvement.'" Hawthorne v. Va. State Univ., 568 F. App'x 203, 204-05 (4th Cir. 2014) (per curiam) (alteration in original) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d

10

62, 75 (2d Cir. 2000)).[3]  For example, "[d]irectors or managers can be held personally liable when they 'intentionally cause a corporation to infringe the rights secured by' section 1981," but they cannot be held liable if there is no evidence that they "directed, participated in or even approved of intentional discrimination."  Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 483 (D. Md. 2002) (quoting Tillman, 517 F.2d at 1145), aff'd per curiam sub nom., Skipper v. Giant Food Inc., 68 F. App'x 393 (4th Cir. 2003).  "Individual liability under section 1981 extends only insofar as an individual's own actions cause a section 1981 violation."  Bailey v. Islands Mech. Contractor, Inc., --- F. Supp. 3d ---, 2026 WL 867008, at *7 (E.D.N.C. 2026) (collecting cases).

To determine whether a plaintiff has plausibly alleged sufficient individual action to sustain a § 1981 claim, courts may examine whether the individual defendant had the individual capacity to undertake the adverse employment action.  Benjamin v. Sparks, 173 F. Supp. 3d 272, 283 (E.D.N.C. 2016), aff'd on other grounds, 986 F.3d 332 (4th Cir. 2021).  "Courts may also examine whether [the] plaintiff plausibly alleges direct evidence of the defendant's racially discriminatory animus and shows that the individual defendant took part in the adverse employment action."

---

[3] The Fourth Circuit does not ordinarily accord precedential value to its unpublished opinions, which "are 'entitled only to the weight they generate by the persuasiveness of their reasoning.'"  See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (quoting Hupman v. Cook, 640 F.2d 497, 501 (4th Cir. 1981)).

11

Id. (citing Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005)).

Here, Riley alleges that the members of the Board "controlled" the hiring process for the general manager position and "directed the hiring, the selections and the decision-making process." (Doc. 6 ¶ 88.) He also alleges that the Board "failed to follow the selection process in a manner that assured an equitable and non-discriminatory outcome." (Id. ¶ 54.) According to Riley, the Board made its decision on finalists "with knowledge of the race and estimated age of the candidates." (Id. ¶ 62.) Riley further alleges that Board members Kinley and Chalk gave shifting, inconsistent reasons for his failure to advance among the five finalists. (Id. ¶¶ 67, 91-93.) And finally, he alleges that Board member Kinley served as the signatory for the NDA and, upon information and belief, directed Overbee to force Riley to sign it as a retaliatory measure. (Id. ¶¶ 106, 119-20.)

These allegations fall short of stating plausible failure to promote, non-selection, or termination claims against the Board members. Apart from not plausibly alleging that any of the Board members had the individual authority to deny his promotion or terminate his employment (indeed, Riley does not allege (or know) who, if anyone, voted for or against his candidacy), he does not plausibly allege that any of the individual Board members intentionally acted to impair his employment contract, or that

12

they exhibited discriminatory animus towards him because of his race. His allegation about the selection process is also vague and conclusory.

As for the § 1981 retaliation claims against the individual Board members, however, Riley has sufficiently alleged a § 1981 violation by Board member Kinley based on his involvement in requiring Riley to sign the NDA. But the allegations do not otherwise demonstrate any causal connection between an individual Board member and the NDA requirement.[4] Thus, Defendants' motion to dismiss Riley's claims brought pursuant to § 1981 against the Board members in their individual capacities will be granted, except for his § 1981 retaliation claim against Board member Kinley. See Benjamin, 173 F. Supp. 3d at 283-84; Bailey, 2026 WL 867008, at *9. In the event Riley can cure the deficiency, dismissal will be without prejudice.

### 3. Claims Against Board Members in Their Official Capacities

Defendants argue that the claims against the members of the Board in their official capacities are duplicative of Riley's claims against PEMC and should therefore be dismissed. (Doc. 8 at

---

[4] The court acknowledges that the amended complaint alleges that Board members Kinley and Chalk "knew of" the oral employment contract between Riley and PEMC and "acted with legal malice" to interfere with Riley's contractual rights. (Doc. 6 ¶ 147.) It also alleges that Board member Chalk and others "actively supported" Board member Kinley. (Id. ¶ 148.) These allegations are wholly conclusory and do not further the plausibility of Riley's claims against any individual Board member.

13

15.)  Riley does not respond to this contention.

To the extent that official capacity claims can be properly brought against board members of a nonprofit electric utility, Riley's official capacity claims are redundant and duplicative of his claims against PEMC.  See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 788 (M.D.N.C. 2011).  Thus, the official capacity claims will be dismissed.

### C. Whether Riley Timely Filed His EEOC Charge for the Title VII and ADEA Failure to Promote Claims

Defendants contend that Riley did not timely exhaust his administrative remedies because the amended complaint indicates that he knew on May 6, 2024, he would not be hired for the general manager position.  (Doc. 8 at 17.)  Thus, his first EEOC charge filed on December 8, 2024, would not have been within the 180-day window from when he received notice of his non-selection.  (Id.)  Defendants further argue that the amended complaint does not otherwise allege specific facts showing that Riley timely filed the EEOC charge.[5]  (Id. at 16.)

Riley counters that the adverse action occurred on June 11, 2024, when he became aware that PEMC had hired a younger white male without CEO experience for the general manager position. (Doc. 9 at 13-14.)  He asserts in the alternative that equitable

---

[5] Because Riley filed his second EEOC charge alleging retaliation and discriminatory termination only five days after his termination, there are no timeliness concerns over Riley's Title VII and ADEA retaliation and termination claims.  (See Doc. 6-1 at 2-3.)

14

tolling or estoppel applies because PEMC misled him on the reason he did not advance in the interview process, and that he did not learn the true reason for his non-selection until he discovered the eventual hire also lacked CEO experience on June 11, 2024. (Id. at 14-15.)

Generally, a Title VII discrimination charge must be filed "with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice." EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988) (citing 42 U.S.C. § 2000e-5(e)); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). Similarly, the ADEA requires that an age discrimination charge be filed with the EEOC within 180 days after the alleged unlawful practice occurred. Hamilton v. 1st Source Bank, 928 F.2d 86, 87 (4th Cir. 1990) (en banc). Failure to promote is an example of a discrete act of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Thus, "[t]he time a plaintiff is informed of the employment decision triggers the commencement of the limitations period." Muir v. Winston-Salem State Univ., No. 11-cv-282, 2012 WL 683359, at *5 (M.D.N.C. Mar. 2, 2012), abrogated on other grounds by Fort Bend County v. Davis, 587 U.S. 541 (2019); see also Hamilton, 928 F.2d at 88-89 ("To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing

15

period.").

Here, Riley alleges that on or about May 6, 2024, "the Board had already put into motion its intention to hire Jordan Overbee." (Doc. 6 ¶ 57.)  He alleges that finalist interviews continued "well after" Taylor informed him that he would not advance to the list of five finalists.  (Id. ¶¶ 67, 70, 71.)  Riley then alleges that he did not realize discrimination based on race or age had occurred until the Board announced Overbee's hiring on June 11, 2024.  (Id. ¶ 84.)  Riley's EEOC charge was filed exactly 180 days after this announcement, on December 8, 2024.  (Id. ¶ 118.)

The amended complaint never provides the date PEMC informed Riley that he would not advance as a finalist for the general manager position.  And in his response, Riley never asserts that he knew of his non-selection as a finalist within 180 days before he filed the EEOC charge.  Rather, Riley contends that the 180-day window for his EEOC charge did not commence until he "became aware that he had been lied to regarding the need of CEO experience for the role."  (Doc. 9 at 13.)  But as Defendants correctly argue, the statute of limitations on the EEOC charge began to run on the date Riley knew he would not be selected for the position.  (Doc. 10 at 3.)

Riley's allegations that by May 6, 2024, "the Board had already put into motion its intention to hire Jordan Overbee" and that finalist interviews continued "well after" Taylor informed

16

him of the end of his candidacy concede that he was told he was not to be selected before the Board announced Overbee's hiring. And because the Board announced Overbee's hiring exactly 180 days before Riley filed his EEOC charge, any daylight between this announcement and Riley's knowledge of his non-selection would render the EEOC charge untimely. At a minimum, because the factual allegations indicate that Riley was informed of the employment decision before June 11, 2025, and considering Riley's failure to contest that it fell outside the 180-day period, the court cannot find his EEOC charge timely. See Montgomery v. Anson Cnty. Bd. of Educ., No. 16CV309, 2016 WL 6139933, at *2 (W.D.N.C. Oct. 20, 2016) (dismissing the plaintiff's failure to promote claims because the complaint lacked any supporting facts to establish the timeliness of the EEOC charge).

Riley argues that even if his EEOC charge was untimely, he should benefit from equitable estoppel or equitable tolling. (Doc. 9 at 14-15.) Equitable estoppel "applies 'where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline.'" Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 549 (4th Cir. 2019) (quoting English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987)). Thus, "[t]he plaintiff's failure to timely file his claim derives not from his ignorance of the cause of action, but rather from conduct taken by the defendant to induce

17

the plaintiff not to timely file his claim."  Id.

By contrast, equitable tolling "focuses on whether there was excusable delay by the plaintiff."  Id. (quoting Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002)).  It "is appropriate in those 'rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'"  Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)).  Equitable tolling "does not assume a wrongful – or any – effort by the defendant to prevent the plaintiff from suing."  Edmonson, 922 F.3d at 549 (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990)).  A plaintiff seeking equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe v. United States, 577 U.S. 250, 255 (2016) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)).  At bottom, Riley argues that either equitable estoppel or equitable tolling applies because PEMC misled him on the reason for his non-selection until the Board announced the final hire on June 11, 2024.  (Doc. 9 at 15.)  He cites two decades-old, non-precedential cases, Wilkerson v. Siegfried Insurance Agency, Inc., 621 F.2d 1042, 1045 (10th Cir. 1980), and Baruah v. Young, 536 F. Supp. 356 (D. Md.

18

1982), for the proposition that purposely misleading actions by an employer can justify equitable tolling when the actions cause the employee to file an untimely EEOC charge. (Id. at 15.)

Riley never addresses the required elements for equitable tolling set out by the Supreme Court in Menominee. Even assuming that the Board members' responses to Riley's inquiries were incorrect or even misleading, Riley fails to allege any facts to show how PEMC induced him to miss the filing deadline, which came months later. Riley points to no extraordinary circumstance that prevented his timely filing, especially considering that he alleges he investigated his concerns of discrimination from June "through September 2024" but still did not file an EEOC charge until December 8, 2024. (Doc. 6 ¶¶ 86-87, 100, 118.) Rather, he alleges that PEMC "dismissed [his] core concerns with nothing more than an unsubstantiated explanation" and was otherwise unresponsive to "his request for the Board to support its assertion of a non-discriminatory selection process and to provide quantifiable criteria." (Id. ¶¶ 103, 116.)

For these reasons, the amended complaint fails to demonstrate why it would be unconscionable to enforce the limitation period against Riley or how PEMC caused him not to timely file his claim. Therefore, Defendants' motion to dismiss Riley's failure to promote and non-selection claims brought pursuant to Title VII and the ADEA as untimely will be granted.

19

**D. Whether Riley Has Alleged a Plausible Failure to Promote Claim Pursuant to § 1981**

Defendants next argue that Riley has failed to plead facts showing that he was significantly more qualified than Overbee for the president and general manager position based on the job posting's specific standards. (Doc. 8 at 20-21.) They contend that Riley cannot reconcile his argument that PEMC did not apply a standardized hiring procedure with his allegation that PEMC used a professional recruiter. (Id. at 21.) Further, Defendants assert that even Riley's own suggested metrics undermine his suitability for the position and that Riley has not alleged inconsistencies between the explanations provided to him for his non-selection and the posted hiring criteria. (Id. at 22-23.) Finally, Defendants argue that Riley's allegation that the Board pre-selected Overbee before the finalist interviews defeats his claims by suggesting that "all other candidates were equally disfavored in comparison." (Id. at 24.) Riley responds simply that he has alleged facts giving rise to an inference that he was not promoted because of his race. (Doc. 9 at 9.)

In the Title VII context, a plaintiff may show discriminatory pretext by "show[ing] that an employer's proffered nondiscriminatory reasons for the [adverse action] are inconsistent over time, false, or based on mistakes of fact." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir.

20

2019); see CBOCS W., Inc. v. Humphries, 553 U.S. 442, 450-57 (2008) (discussing the "overlap" between § 1981 and Title VII). But "employers may have multiple, legitimate reasons for their actions, and an employer's multiple reasons do not create the inference of pretext where 'there has been no retraction of any of its reasons nor are any of its reasons inconsistent or conflicting.'" Lyons v. City of Alexandria, 35 F.4th 285, 292 (4th Cir. 2022) (citation modified) (quoting Johnson v. Nordstrom, Inc., 260 F.3d 727, 733-34 (7th Cir. 2001)).[6]

Here, Riley relies on an assertion that he alleged "sufficient facts to support the reasonable inference that [he was] at least as qualified for the position" as Overbee. (Doc. 9 at 9.) And in the amended complaint, Riley does allege that he "had twice as much executive leadership, field and managerial experience" as Overbee. (Doc. 6 ¶ 77.) As an example, Riley alleges that he had 16 years of operational experience and spent 11 years as Vice President of Operations at PEMC, whereas Overbee had only 17 months of experience as a vice president of operations.[7] (Id.) Riley

---

[6] The court already provided the standard for a § 1981 claim on a motion to dismiss. See supra Section II.B.2.

[7] Riley further alleges that Overbee lacks a bachelor's or master's degree, while Riley has both. (Doc. 6 ¶ 76.) Defendants point out that Overbee appears on the North Carolina public registry of licensed professional engineers. (Doc. 8 at 21 n.4 (citing License Lookup, N.C. Bd. of Exam'rs for Eng'rs & Supervisors, https://www.memberbase.com/ncbels/search (last visited June 4, 2026)).) A four-year degree is a prerequisite for licensure. See 21 N.C. Admin. Code 56 .0501.

also alleges that the reason PEMC gave for his non-selection changed over time, shifting from his lack of CEO experience, to his lack of broad knowledge of PEMC, his failure to attend a management internship program, and finally his failure to submit a vision statement. (Id. ¶¶ 67, 91-93.) And notably, according to the amended complaint, both Riley and Overbee lacked CEO experience, Overbee had no personal experience with PEMC, Riley participated in internships as part of a Master of Business Administration program, and he submitted a vision statement in his video review. (Id. ¶¶ 79, 91-93.)

At this stage, and drawing every reasonable inference in his favor, Riley has alleged a plausible § 1981 failure to promote claim.[8] He has provided specific facts to show that, at least by one metric, he was more qualified than Overbee.[9] He also alleges that two of the proffered reasons for his non-selection were

_____

[8] Defendants are correct that the use of a professional recruiter, the publication of the job opening and selection criteria, Riley's automatic advancement to the semifinalist round, and the alleged pre-selection of Overbee as the preferred candidate all tend to cut against a finding of intentional discrimination based on race. (See Doc. 8 at 21-22, 24.) But here, the court must draw all reasonable inferences in Riley's favor.

[9] Defendants argue that Riley has failed to plead that he was significantly more qualified than Overbee based on the specific standards announced by PEMC. (Doc. 8 at 20-21.) In support, they have attached PEMC's job posting for the president and general manager position to their motion to dismiss. (See Doc. 7-1.) Regardless of whether the court may properly consider this posting at the Rule 12(b)(6) stage, the job posting expressly denotes "an experienced leader" as PEMC's ideal candidate and lists requirements for "progressively responsible leadership experience" and experience with electric utilities. (Id. at 2-3.)

22

contradicted by the underlying facts, while the other proffered reasons would have similarly disqualified Overbee.  Thus, the court declines to dismiss his § 1981 failure to promote claim against PEMC.

### E.  Whether Riley Has Alleged Plausible Termination Claims Pursuant to the ADEA, Title VII, and § 1981

Finally, Defendants argue that the amended complaint concedes Riley's termination occurred because of his refusal to sign the NDA.  (Doc. 8 at 24-25.)  Further, Defendants assert that Riley failed "to adequately plead that any similarly situated employee was treated more favorably."  (Id. at 25-26.)  Riley counters that PEMC replaced him with a white male who had less experience and education.  (Doc. 9 at 10.)  He also contends that PEMC failed to follow its own policies and procedures in requiring him to sign the NDA.  (Id.)

The ADEA makes it unlawful for an employer to discharge any individual because of his age.  See 29 U.S.C. § 623(a)(1).  "To prevail on an ADEA claim, a plaintiff must prove by a preponderance of the evidence that age constituted the but-for cause of the adverse employment action."  Bandy v. City of Salem, 59 F.4th 705, 710 (4th Cir. 2023).  At the motion to dismiss stage, the plaintiff must allege facts sufficient to satisfy the elements of an ADEA cause of action.  Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020) (per curiam) (quoting McCleary-Evans v. Md. Dep't of

<u>Transp., State Highway Admin.</u>, 780 F.3d 582, 585 (4th Cir. 2015)).

Similarly, "[i]n the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." <u>Bing v. Brivo Sys., LLC</u>, 959 F.3d 605, 616 (4th Cir. 2020) (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 515 (2002)). Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Thus, the court must inquire whether the plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" <u>Bing</u>, 959 F.3d at 617 (quoting <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010)).[10]

Here, Riley's amended complaint clearly connects his termination to his failure to sign the NDA. According to the amended complaint, Overbee first told Riley that all staff were required to sign NDAs shortly after Overbee started as the new President and General Manager, though he later clarified that the NDA requirement only applied to "certain staff." (Doc. 6 ¶¶ 110-11.) Riley still had not signed the NDA more than five and a half months later, and Overbee "issued a mandate" to Riley to return the signed NDA. (<u>Id.</u> ¶ 133.) PEMC then terminated Riley's employment one week after this mandate for the stated reason that

---

[10] Again, the court already provided the standard for a § 1981 claim on a motion to dismiss. <u>See</u> <u>supra</u> Section II.B.2.

24

he refused to sign the NDA.  (Id. ¶¶ 134-35.)

Riley alleges that PEMC did not require any other employee "with his tenure" to sign the NDA, but he fails to allege that any other vice president or executive was excused from the NDA requirement.  (See id. ¶ 108.)  Nor does he provide any allegations of comparators who similarly refused to sign the NDA but were not terminated.  And while a company's alleged failure to follow its own policies and procedures, "if true, could establish unfairness in the process, it is not probative of discriminatory intent." Duggan v. Sisters of Charity Providence Hosps., 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (collecting cases).

Ultimately, to survive Rule 12(b)(6) dismissal, Riley's allegations must indicate not only that he was treated differently, but that he was treated differently because of his race or age. See Lemon v. Myers Bigel, P.A., 985 F.3d 392, 400 (4th Cir. 2021); Tickles, 805 F. App'x at 207 (quoting McCleary-Evans, 780 F.3d at 586).  Yet beyond the plain facts that Riley is an African American male who is over 50 years old and was replaced by a younger, white male, the amended complaint is simply devoid of any allegations to connect Riley's termination to his race or age rather than his failure to sign the NDA.  Thus, the discriminatory termination claims will be dismissed.  See Katti v. Arden, 161 F.4th 217, 228 (4th Cir. 2025) (affirming the district court's Rule 12(b)(6) dismissal of the plaintiff's race discrimination claims in part

25

because an "obvious alternative explanation" for the employer's adverse action "emerge[d] from [the] complaint" (quoting <u>McCleary-Evans</u>, 780 F.3d at 588)).

To be sure, the NDA requirement also pertains to Riley's Title VII and § 1981 retaliation claims, which Defendants' motion to dismiss does not address. For example, the amended complaint alleges that Riley "believed that the NDA was used as a retaliatory measure" and that PEMC "terminated him because of his engaging in the protected activity." (Doc. 6 ¶¶ 119, 143.) Substantive discrimination claims and retaliation claims contain different elements, and the statutory provisions serve different purposes in the employment context. <u>Laurent-Workman v. Wormuth</u>, 54 F.4th 201, 212-13 (4th Cir. 2022). Because Riley's retaliation claims remain unchallenged, these claims will go forward.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 7) is GRANTED as follows:

1.  As to all Title VII and ADEA claims against the members of the Board, and those claims are DISMISSED.

2.  As to all § 1981 claims against the members of the Board, except for the § 1981 retaliation claim against Board member Kinley, and those claims are DISMISSED WITHOUT PREJUDICE.

26

3. As to all Title VII and ADEA failure to promote and non-selection claims against PEMC, and those claims are DISMISSED.

4. As to all Title VII, ADEA, and § 1981 termination claims against PEMC, and those claims are DISMISSED.

In all other respects, the motion to dismiss is DENIED.

This leaves as the remaining claims: (1) the § 1981 retaliation claim against Board member Kinley; (2) the § 1981 failure to promote claim against PEMC; and (3) the Title VII and § 1981 retaliation claims against PEMC.

/s/   Thomas D. Schroeder
United States District Judge

June 5, 2026

27